**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1381-16T2

CLIFFORD J. GRAF,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted January 16, 2019 - Decided February 20, 2020

Before Judges Fuentes and Accurso.

On appeal from the New Jersey Department of Corrections.

Clifford J. Graf, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Kevin J. Dronson, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Appellant Clifford J. Graf is an inmate at South Woods State Prison. He appeals from the decision of the Department of Corrections (DOC) denying his application to be reclassified and placed in "full minimum status." After reviewing the record before us and mindful of the relevant standard of review, we affirm.

On February 3, 1986, a jury convicted appellant of murder, N.J.S.A. 2C:11-3a and N.J.S.A. 2C:11-3a(2), by shooting the victim four times in the head with a .22 caliber handgun; and third degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b. The court sentenced appellant to an aggregate term of life imprisonment with thirty-two years of parole ineligibility.[1] Appellant was twenty-two years old at the time he committed these crimes. He will be fifty-seven years old in April 2020.

On June 28, 2016, the Institutional Classification Committee (ICC) reviewed and denied appellant's request for a change in status. In reaching this decision, the ICC noted that "[d]enial is appropriate & supported by Central Office 7/26/16. . . . Extreme Level of Violence Used in the Commission of the

---

[1] Although defendant was also convicted of first degree felony murder, N.J.S.A. 2C:11-3a(3), first degree armed robbery, N.J.S.A. 2C:15-1, second degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a, and third degree theft, N.J.S.A. 2C:20-3, these offenses merged at the time of sentencing as reflected in the Judgement of Conviction.

Offense & Resulted in a Life Sentence." After he exhausted the DOC's administrative review process, appellant sought judicial review of this decision in this court.

N.J.A.C. 10A:9-4.5(b) provides:

> When considering inmates whose present offense or past history involves arson, escape, assault, <u>murder</u> or sexual offenses, or who have been known to have psychological problems, the I.C.C. shall utilize psychiatric or psychological evaluations which are not more than six months old and which address suitability for reduced custody status.
>
> [(Emphasis added).]

Appellant's psychological evaluation did not reveal he suffers from any mental health problems.

Here, the ICC's decision was guided by the regulatory standards adopted by the DOC. These regulations recognize five different classifications of "custody status" for inmates:

> (a) Inmates classified as "close custody status" shall be assigned to selected activities such as work and recreation within the confines of the unit under continuous supervision.
>
> (b) Inmates classified as "maximum custody status" shall be assigned to activities within the confines of the correctional facility under continuous supervision.

(c) Inmates classified as "medium custody status" shall be assigned to activities inside the security perimeter of the correctional facility under frequent and direct observation of staff.

(d) Inmates classified as "gang minimum custody status" may be assigned to activities or jobs which routinely require them to move outside the security perimeter of the correctional facility, but on the grounds of the facility and under continuous supervision of a custody staff member, civilian instructor or other employee authorized to supervise inmates. The time served in gang minimum custody status shall be at the discretion of the Institutional Classification Committee (I.C.C.).

(e) Inmates classified as "full minimum custody status" are those assigned to:

1. Work details, jobs or programs outside the main correctional facility, (on or off the grounds of the facility) with minimal supervision; and/or

2. A satellite unit or minimum security unit.

[N.J.A.C. 10A:9-4.3.]

Appellant is classified as a "gang minimum custody status" under section (d). He sought a reclassification to "full minimum custody status" under section (e).

N.J.A.C. 10A:9-2.6 defines the "Objective criteria for the Reclassification Instrument for Male Inmates." N.J.A.C. 10A:9-2.6(a) describes the total number of points necessary to support a recommendation to reclassify the status of an inmate. N.J.A.C. 10A:9-2.6(b)(1)(i) considers "homicide" the most serious

4

offense under the Severity of Offense Scale in N.J.A.C. 10A:9-2.8 and imposes "six points" to inmates convicted of this crime. Furthermore, only inmates with a "score of four points or less shall indicate a recommendation for placement into minimum custody status." N.J.A.C. 10A:9-2.6(a)(3). Thus, based on this regulatory scheme, there is a presumption that appellant is not a suitable candidate for a reduced custody status.

It is long-settled that a reduced custody status "is a privilege and not a right." N.J.A.C. 10A:9-4.2. See also Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 30 (App. Div. 2001). In Smith, this court held that "[n]either the nature of an inmate's conviction, except for those offenses specifically excluded for eligibility in N.J.A.C. 10A:9-4.8,[2] nor the location of a correctional facility within a residential area alone, may permanently disqualify an inmate from consideration for 'full minimum custody status.'" Id. at 32. However, there is no indication that the DOC considers appellant permanently ineligible for a reduction in custodial status based only on his murder conviction.

This court's review of final decisions by a state administrative agency is limited. In re Carter, 191 N.J. 474, 482 (2007). We will uphold such a decision absent "'a clear showing that it is arbitrary, capricious, or unreasonable, or that

---

[2] Appellant was not convicted of any offenses listed in N.J.A.C. 10A:9-4.8.

it lacks fair support in the record.'" Hemsey v. Bd. of Trs., Police & Firemen Ret. Sys., 198 N.J. 215, 223-24 (2009) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Accordingly, "our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (App. Div. 2013).

With these settled principles as our guide, we conclude the DOC's decision to deny appellant's reclassification status was not arbitrary nor capricious. The ICC applied the factors codified in a regulatory scheme that take into account the inherent risks associated with the operation of a penal institution. It is not our role as an intermediate appellate court to micro-manage the prison nor substitute our judgment for the judgment of those who are charged with this responsibility.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1381-16T2